## Case No. 840.

BANGS et al. v. LOWBER et al.

[2 Cliff. 157.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1862.[2]

SHIPPING—CHARTER-PARTY — PROVISION TO PROCEED WITH ALL POSSIBLE DESPATCH.

1. A vessel, while on a voyage to Melbourne, was chartered by the managing owners to defendants, for a voyage from Calcutta to a port in the United States. The charter-party con-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Reversed in 2 Wall. (69 U. S.) 728.]

tained a clause that the vessel was to "proceed from Melbourne to Calcutta with all possible despatch." Before the master was advised of this engagement, the vessel had sailed from Melbourne to Manilla, seeking business, and did not arrive at Calcutta as soon as the parties had contemplated. The defendants refused to load the vessel; and upon suit to recover damages for a breach of the charter-party, brought by the managing owners, who were described therein as "owners" of the vessel, it was held, that although there were other owners, the suit was rightly brought in the names of those subscribing the charter-party in good faith.

2. It was also held, that the clause quoted above was not a condition precedent, but an independent stipulation, which gave the charterers a claim for damages, on failure of performance by the owners, but did not give them the right to avoid the contract, because it appeared that the object of the voyage was not wholly frustrated thereby.

[See note at end of case.]

[See Philadelphia, W. & B. R. Co. v. Howard, 13 How. (54 U. S.) 307; Dermott v. Jones, 23 How. (64 U. S.) 220.]

[At law. Action by Elkanah Bangs and others against William Lowber and others for breach of a charter-party. Judgment for plaintiffs. This was afterwards reversed by the supreme court in Lowber v. Bangs, 2 Wall. (69 U. S.) 728.]

This was an action of assumpsit, and came before the court on an agreed statement of facts, from which it appeared that on the 9th of June, 1858, while the ship Mary Bangs was on a voyage from New York to Melbourne, the plaintiffs, who were managing owners, entered into a charter-party with defendants, in which it was agreed, that the vessel should "proceed from Melbourne to Calcutta with all possible despatch," and there receive a full cargo, to be provided by defendants, and transport the same to a port of discharge in the United States; that, although the plaintiffs used due diligence in informing the master of the ship of this contract, the information, owing to an interruption of the mails, did not reach him until he had left Melbourne and arrived at Manilla with his vessel, in search of business. Upon receipt of this intelligence he sailed for Calcutta; where he arrived the 26th of February, 1859, and reported himself to defendants' agent as ready to receive cargo. Besides the Mary Bangs, the defendants, at about the same time, chartered two other vessels for a voyage from Calcutta to the United States, and placed their agents there in funds to lade them as well as the Mary Bangs. As soon as they learned that the Mary Bangs had sailed from Melbourne to Manilla, they instructed their agents at Calcutta that this deviation nullified the engagement, which they considered a fortunate circumstance, as freights had fallen; and, under their instructions, the agent declined to furnish a cargo for her, but took up another vessel, and loaded her with a cargo purchased after the arrival at Calcutta of the Mary Bangs, with funds originally provided by defendants to freight the latter vessel.

The action was brought by the managing owners, who subscribed the charter-party, as "owners," to recover damages for breach of defendants' engagement to lade the vessel; and it was agreed that, if the court were of opinion they could maintain the action, an assessor should be appointed to ascertain the amount of damages they were entitled to recover.

B. R. Curtis and G. O. Shattuck, for plaintiffs.

It has been decided in a large number of English cases, that such clauses as "ship to proceed with all convenient speed," or "in a reasonable time," or "with all possible despatch," and similar clauses, are not, in charter-parties, conditions precedent, but are merely independent stipulations; and, unless the alleged breach goes to the whole root and consideration, it only gives a claim for damages. Clipsham v. Vertue, 5 Adol. & E. (N. S.) 265; Fothergill v. Walton, 8 Taunt. 576; Freeman v. Taylor, 8 Bing. 124; Tarrabochia v. Hickie, 1 Hurl. & N. 183; Hurst v. Usborne, 18 C. B. 144; Seeger v. Duthie, 8 J. Scott, N. S. [8 C. B. N. S.] 45; Dimech v. Corlett, 12 Moore, P. C. 199; Behn v. Burness, 5 Law T. (N. S.) 670.

In some cases, it was held in England, that a stipulation in a charter to sail on or before a day certain was a condition precedent; and such stipulations were distinguished from those containing the words, "all convenient speed," "within a reasonable time," and "with all possible despatch." Glaholm v. Hays, 2 Man. & G. 257; Ollive v. Booker, 1 Exch. 416.

In Boone v. Eyre, 1 H. Bl. 273, note, Lord Mansfield laid down the following rule: "When mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other; but where they go only to part, where a breach may be paid for in damages, then the defendant has a remedy on his covenant, and shall not plead it as a condition precedent." See Abb. Shipp. 266; Davidson v. Gwynne, 12 East, 381; Mill-Dam Foundery v. Hovey, 21 Pick. 417, 437; Philadelphia, W. & B. R. Co. v. Howard, 13 How. [54 U. S.] 307.

The burden is on the defendants to show that the object of their voyage was frustrated. Dimech v. Corlett, 12 Moore, P. C. 199; Tarrabochia v. Hickie, 1 Hurl. & N. 183.

The action was properly brought in the name of the part owners, by whom the charter was made. Seeger v. Duthie, 8 J. Scott, N. S. [8 C. B. N. S.] 45.

S. Bartlett, for defendants.

It is clearly settled that having in the contract declared themselves "owners," the plaintiffs are not by law allowed to show that they were "managing owners and the ship's husbands," that is to say, agents of the other owners. Humble v. Hunter, 12 Adol. & E. (N. S.) 310.

It is unnecessary to consider what would have been the rights or form of action in behalf of the other owners, if the defendants had entered into the possession of, and used the vessel for the voyage. The fact that the contract has never been executed, and no change occurred in the position of parties disposes of that question. Rayner v. Grote, 15 Mees. & W. 359–365.

It is a well-established rule of construction, that the words added in writing to the printed formula, are to have a greater effect given to them, than the printed words (in case of any doubt upon the sense or meaning of the whole), as the written words are the immediate language and terms stated by the parties themselves for the expression of their meaning. Arn. Ins. 80; Robertson v. French, 4 East, 130; Coster v. Phoenix Ins. Co., [Case No. 3,264;] Delonguemare v. Tradesmen's Ins. Co., 2 Hall, 589–622; Wallace v. Insurance Co., 4 La. 289; Weisser v. Maitland, 3 Sandf. 318, 322.

In all mercantile contracts, and more especially in contracts of affreightment, time is not merely an essential element, but is of the essence of the contract itself. The merchant has this always in view in planning his voyages, ordering his cargoes, and calculating in regard to the markets of the different countries.

This each party had in view in making the charter, and we accordingly find that they inserted special clauses, in writing on this subject, viz. the words, "ship to proceed from Melbourne to Calcutta with all possible despatch," and "that the owners will use the most direct means to forward instructions to the master with copy of this charter, ordering it to be fulfilled, but should it so happen the ship should arrive at Melbourne before these instructions, and the master should have engaged his ship before receiving them, this charter shall be void."

It is material upon this head, to bear in mind, that this ship at the time of the charter was on a voyage to Melbourne, and that the only instructions which the master had were verbal, "to seek business, and do the best he could in getting freight at Melbourne or elsewhere."

On behalf of the defendants, it is maintained, that upon the true construction of the charter-party, having reference to the purposes and objects of the parties, and considering all its parts and clauses, the finding the vessel at Melbourne upon receipt of such despatches, and disengaged, is to be construed a condition precedent on which the whole contract was to depend.

In other words, that the plaintiffs did in fact warrant, so far as to make it a condition precedent to the vitality of the contract, that such should be the case.

In considering this matter, it is always to

be borne in mind that the contract in suit is executory, and not executed; that the plaintiffs are seeking to recover damages for the breach, and not compensation for performance.

Whether or not a particular stipulation in an agreement shall operate as a warranty or condition precedent, the non-observance or performance of which will dispense with the performance of the contract by the other, or as an independent stipulation or agreement, is to be determined, not by any particular phrases, or any special collocation of words, but from the intent of the parties, to be collected from the language used by them, the subject matter of the contract, and the surrounding circumstances. Havelock v. Geddes, 10 East, 555.

If the non-performance of any particular agreement or covenant goes to the whole root and consideration of the contract, then such covenant or agreement is a condition precedent. Havelock v. Geddes, above cited; Davidson v. Gwynne, 12 East, 381; Stavers v. Curling, 3 Bing. N. C. 355.

In the case at bar, the breach of the agreement or covenant on the part of the plaintiffs did go to the whole root and consideration, and did deprive the defendants of the entire use of the ship. The authorities clearly support the position of the defendants in this matter. Shadforth v. Higgin, 3 Camp. 385; Shubrick v. Salmond, 3 Burrows, 1637; Glaholm v. Hays, 2 Scott, N. R. 471; Ollive v. Booker, 1 Exch. 416; Weisser v. Maitland, 3 Sandf. 318.

The words in the charter-party, "ship to proceed from Melbourne to Calcutta with all possible despatch," constitute a plain and clear warranty that the vessel should so proceed (if the contract attached); and the vessel having gone another voyage to Manilla, the defendants were released from the obligation to load the vessel.

This is manifest from the place which this clause occupies in the agreement, and from its peculiar language.

All the other clauses of the charter-party are found strictly and properly in the language of agreement only; while this is otherwise, showing that a difference was intended, and none can be suggested than that one sounds in agreement, and the other in condition.

The words themselves, "ship to proceed," &c., by common usage import the same as "conditioned to proceed," as the words, "on or before a given day," do by common usage import the same as "conditioned to sail or warranted to sail."

Looking at the subject-matter of the contract, without regarding the precise words, construing the words as a condition precedent, will carry into effect the intention of the parties, with more certainty than holding them to be matter of contract only, and merely the ground of an action for damages.

The defendant's case must not be confounded with the class of cases where the charterer has received the benefit of the charter, or given by his acts a construction to the contract, or waived the performance of the condition precedent. Such are Constable v. Cloberie, Palmer, 397; Bornmann v. Tooke, 1 Camp. 377; Davidson v. Gwynne, 12 East, 381; Havelock v. Geddes, 10 East, 555; Ritchie v. Atkinson, 10 East, 295; Boone v. Eyre, 2 W. Bl. 1312.

If these positions are wrong, still it must have been contemplated by the parties, that the vessel must have been ready to prosecute the adventure in a reasonable time, and the great length of time which elapsed, discharged the defendants from any obligation to load her.

The same doctrine in regard to deviation and delay, as affecting policies of insurance, apply to charter-parties; and whenever the delay or detention is such as would release an underwriter, a charterer will be discharged from his obligations under the charter. Mount v. Larkins, 8 Bing. 108; Freeman v. Taylor, Id. 124; Palmer v. Marshall, Id. 317; Abb. Shipp. (Ed. 1846,) 325.

The provision of the charter-party, that if the master should have engaged his vessel before receiving instructions, the charter should be void, is satisfied, by his having proceeded on another voyage, in search of other business.

The term "engaged" does not here mean merely that the vessel should have been chartered or taken up by freighters, for another business. It has a wide and more comprehensive meaning; that is, that the master of the vessel should not have embarked his vessel upon another voyage, whether a sailing or freighting voyage. This provision was not inserted merely for the benefit of the plaintiffs; it benefits the defendants as well. When, therefore, the vessel finally departed from Melbourne, whether in ballast or otherwise, she was "engaged" in other business. If the master, on arrival at Manilla, had found a freight, the matter would have ended. He went there to seek one, and the defendants' obligations are as well thereby discharged. Soames v. Lonergan, 2 Barn. & C. 564.

CLIFFORD, Circuit Justice. Suit is brought in the name of the managing owners; and it is objected by the defendants, that it cannot be maintained, because the other owners of the vessel are not joined; but the suit is upon the charter, and inasmuch as the other owners are not named in the contract, they could not be joined in the suit; so that, unless the action can be maintained in the present form, the owners are without remedy. Much reliance is placed by the defendants upon the case of Humble v. Hunter, 12 Adol. & E. (N. S.) 310, to sustain the objection; but it does not appear to support the doctrine for which it is cited. The charter-party in that case had been executed in the name of the

son; but the suit was in the name of the mother, who was the sole owner of the vessel. Parol proof was offered at the trial to show that the mother was the real owner of the vessel, and that the son had signed the charter-party as her agent, and not as principal. Objection was duly made to the admissibility of the evidence, because the son was described in the charter-party as the owner of the vessel; but it was admitted, and the jury returned their verdict in favor of the plaintiff. Whereupon the defendant obtained a rule nisi to set the verdict aside; and, after argument, it was made absolute, upon the ground that the parol evidence went to contradict the written contract. Lucas v. De la Cour, 1 Maule & S. 249; Robson v. Drummond, 2 Barn. & Adol. 303. No such question, however, arises in this case, as is obvious from the first reading of the agreed statement. The managing owners and ship's husband executed the charter-party in their own name; and, having brought suit to recover damages for a breach of the contract, the defendants offer to prove that other persons are also part-owners of the vessel. They do not prove, or offer to prove, that the plaintiffs were not fully authorized to make the contract on which the suit is brought, or that the vessel was not rightfully in their possession and under their control. Where the minority in interest refuse to participate in the voyage, vessels are often employed by those owning the majority interest; and, if the latter have the lawful possession and control of the vessel, it has never been held that a charter-party executed by them was invalid; and, if obligatory upon the ship, no reason is perceived why it should not be equally so upon the charterers. Enough is not proved in this case to defeat the right of recovery, even if the objection under other circumstances would be a valid one; and upon that ground alone, it must be overruled; but I am of the opinion that a charter-party, executed in good faith in the name of the managing owners and ship's husband, is a valid instrument, binding upon all concerned, and that a suit for damages founded upon the same is well brought in the names of the owners expressed in the instrument. Seeger v. Duthie, 8 J. Scott, N. S. [8 C. B. N. S.] 55.

Two principal positions are assumed by the defendants to show that the plaintiffs ought not to prevail upon the merits.

They insist, in the first place, that, by the true construction of the charter-party, it was a condition precedent, that the owners should use the most direct means to forward instructions to the master; and that, upon the receipt of the same, the vessel should be found at Melbourne, and disengaged. Proper means, it is admitted, were used by the owners to forward the instructions; but the position is that, inasmuch as the vessel had left Melbourne before they were received, the stipulations of the charter-party did not

attach at all, because the parties contemplated that the vessel would be at that port, ready to proceed to Calcutta with all possible despatch.

Secondly, they insist that if, by the true construction of the charter-party, its provisions attached to the ship wherever found, still it must have a reasonable interpretation as to time, and that the long period which elapsed before the vessel arrived at Calcutta discharged the defendants from any obligation to load her. Several other propositions are submitted by the defendants; but those already mentioned embrace the whole substance of the defence, as understood by the court.

Whether a particular covenant is to constitute a condition precedent, depends upon the intention of the parties, as it is to be collected from the instrument in which the covenant is contained. Such was the rule laid down by Lord Ellenborough, in Havelock v. Geddes, 10 East, 563; and it is one often cited and universally approved. Charter-parties are commercial instruments; and their construction should be liberal, agreeable to the intention of the parties, and conformable to the usage of trade in general, and of the particular trade to which the contract relates. Abb. Shipp. 326. Questions of this nature frequently arise; and there are few that are more difficult to solve, or of more practical importance. Intention is the primary rule; and when that is discovered, as was well said in the case of Stavers v. Curling, 3 Bing. N. C. 355, all technical forms of expression must give way. Undoubtedly, a particular covenant by one party may be a condition precedent, so that the breach of it will dispense with the performance of the contract by the other; and whether it is such, or is an independent covenant, is a question to be determined according to the fair intention of the parties, to be collected from the language employed by them; but an intention to make any particular stipulation a condition precedent should be clearly and unambiguously expressed. Where mutual covenants go to the whole of the consideration on both sides, said Lord Ellenborough, in Ritchie v. Atkinson, 10 East, 305, they are mutual conditions, the one precedent to the other; but when the covenants go only to a part, then a remedy lies on the covenant to recover damages for the breach of it; but it is not a condition precedent. Boone v. Eyre, 1 H. Bl. 273. Unless the non-performance, alleged in breach of the contract, goes to the whole root and consideration of it, the covenant broken is not to be considered as a condition precedent, but as a distinct covenant, for the breach of which the party injured may be compensated in damages. Davidson v. Gwynne, 12 East, 389; Abb. Shipp. 342; 2 Smith, Lead. Cas. (Ed. 1855,) 26, 27; Seeger v. Duthie, 8 J. Scott, N. S. [8 C. B. N. S.] 45. Accordingly, it has been

held in repeated cases, that such clauses in a charter-party as "ship to proceed with all convenient speed," or "in a reasonable time," or "with all possible despatch," or the like, are not conditions precedent in such instruments, but are clearly independent stipulations, unless it appears that the alleged breach goes to the whole root and consideration of the contract. Take, for example, the case of Clipsham v. Vertue, 5 Adol. & E. (N. S.) 265, where the stipulation in the charter-party was to load, and forthwith proceed to the port of destination. Charterer refused to load; and, upon suit being brought, pleaded to the action, that the vessel did not arrive at the port of lading until after an unreasonable delay. To that plea the plaintiff demurred; and the plea was held bad, because it did not show that the delay frustrated the object of the voyage. Fothergill v. Walton, 8 Taunt. 576. Where the charter-party contained a stipulation to proceed from one port to another "with all convenient speed"; and the master, instead of conforming to the stipulation, willfully deviated, causing a delay of six weeks; and, in consequence of the deviation, the agent of the defendants refused to load the vessel. Tindal, Ch. J., left it to the jury, to determine whether the deviation deprived the freighter of the benefit of the contract. Freeman v. Taylor, 8 Bing. 124.

"Sail with all convenient speed," were the words of the charter-party in Tarrabochia v. Hickie, 1 Hurl. & N. 183; and the jury found, in an action for refusing to load, that the vessel did not sail with all convenient speed; but the court held, that the finding was no answer to the action, unless it also appeared, that the object of the voyage was wholly frustrated by the breach of the stipulation. Hurst v. Usborne, 18 C. B. 144. Similar views were also expressed in Dimech v. Corlett, 12 Moore, P. C. 199, where the stipulation was, that the vessel, being tight, stanch, and strong, and properly manned, and every way fitted for the voyage, should, "with all convenient speed," proceed in ballast to a designated port; and it appeared at the trial that she was not then finished, and did not get ready to sail for more than a month. It was held, that the failure to sail as stipulated was no answer to the action, without proof of other loss than that occasioned by the falling of freights. Defendants suppose that the cases, Glaholm v. Hays, 2 Man. & G. 257, and Olive v. Booker, 1 Exch. 416, assert a different doctrine; but that opinion does not appear to find support in the later cases. Tarrabochia v. Hickie, 1 Hurl. & N. 183; Seeger v. Duthie, 8 J. Scott, N. S. [8 C. B. N. S.] 45; Dimech v. Corlett, 12 Moore, P. C. 199. Perhaps the latest case is that of Behn v. Burness, 5 Law T. (N. S.) 670, where the stipulation was that the ship, "now in the port of Amsterdam, shall, with all possible despatch, proceed to Newport"; and it was distinctly held that the description of the place where the vessel

was supposed to be was not a warranty or condition precedent.

Both parties understood that the vessel was at sea, and that she might arrive at Melbourne and be engaged by the master before her instructions would come to hand; and they accordingly stipulated that, in that event, the charter should be void. The engagement of the ship before the instructions were received, was to render the charter void; but, in the view of the court, there is not a word in the instrument to warrant the conclusion, that the parties contemplated that any such consequence should flow from the arrival of the vessel at that port, and her temporary departure seeking business. Parties doubtless expected that the ship would proceed from Melbourne to Calcutta; but, when the provision in that behalf is compared with the one providing for the forwarding of instructions, it is evident that it was not intended as a warranty or condition precedent, as the latter is framed in the most general terms possible, clearly indicating that the parties contemplated that the instrument might reach the master at other ports than the one to which he was immediately destined. All possible despatch was required of the vessel, and the owners were required to use the most direct means to forward instructions to the master; but no provision was inserted to render the charter void, unless the master should have engaged the ship before the instructions came to hand. Support to this view of the case is derived from the fact, that no day is fixed for the departure of the vessel from Melbourne, or for her arrival at Calcutta. Unless the instructions were received by the master before the vessel sailed to seek business, it must have been understood by the defendants, that some delay would necessarily ensue in the departure of the vessel; and if, in that contingency, they had been unwilling to accept the contract, the reasonable presumption is, that they would have insisted that some more specific provision upon the subject should have been inserted in the charter-party. Provision was made to protect the plaintiffs, in case the vessel was engaged; and, as the parties appear to have understood the effect of a condition precedent, it may well be supposed, that, if they had intended that the contract should be null in case the vessel sailed from Melbourne before the master received the instructions, they would have said so in terms as explicit as those employed in respect to the engagement of the vessel.

Nothing of the kind, however, is to be found in the instrument; and I am of the opinion that nothing of the kind was intended.

Delay ensued, beyond question, for a longer time than the parties expected when the charter-party was executed; and the remaining question is, whether it was of a character, and for such a length of time, as to justify the defendants, under the circumstances, in refusing to load the vessel. When a day

is appointed for the payment of money, or part of it, or for doing any other act, and the day is to happen, or may happen, before the thing, which is the consideration of the money, or other act, is to be performed, an action may be brought for the money, or for not doing such other act before performance; for it appears that the party relied on his remedy, and did not intend to make the performance a condition precedent; and so it is, where no time is fixed for the performance of that which is the consideration or other act. [Clerke v. Pywell,] 1 Wms. Saund. 319b. Moral wrong is not imputed to the plaintiffs in this case, and could not be. if attempted, with any success, · as the whole evidence shows that the delay of the vessel was the result of an unforeseen accident, over which the plaintiffs could exercise no control. Under those circumstances, the rule is, that the delay is no answer to the action for a refusal to load the vessel, unless it appear that the effect was to frustrate the voyage. Additional authorities to this point are unnecessary, as those already cited are full to the point. Mill-Dam Foundery v. Hovey, 21 Pick. 439; Stavers v. Curling, 3 Bing. N. C. 355. Applying that rule to the present case, it is quite obvious what the result must be. Sufficient saltpetre, or its equivalent, for ballast, was to be furnished by the defendants; but their agent had not purchased any of the article when he wrote to them on the 27th of November, 1858, that he should consider himself at liberty to throw up the charter. Freight, per charter-party, was $13 for whole packages, and half price for broken storage; but, when the defendants refused to load the vessel, the rate had fallen more than one half; which, taken in connection with the letter of the defendants' agent, affords strong ground to conclude that the market rate of freight had more to do with the refusal to load the vessel than any delay which had ensued on her arrival. Full confirmation of that view of the case, if any be needed. is also derived from the subsequent conduct of the agent of the defendants in chartering another vessel to take the place of the Mary Bangs, and loading her with the funds provided to purchase a cargo for the vessel of the plaintiffs.

In view of the whole case, I am of the opinion that the plaintiffs are entitled to recover; and, according to the agreement of the parties, an assessor must be appointed to report the amount.

[NOTE. This decision was reversed in Lowber v. Bangs, 2 Wall. (69 U. S.) 728. Mr. Justice Swayne, in delivering the opinion of the court. said that the stipulation that the ship should proceed from Melbourne to Calcutta with all possible despatch should be construed to mean that she should proceed directly from one place to the other, and that to this extent, at least. it was intended to be made of the essence of the contract; that the stipulation was a condition precedent, and not a mere representation nor an independent covenant. Mr. Justice Clifford and Mr. Justice Nelson, dissenting.]